# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF NEW MEXICO

_____

UNITED STATES OF AMERICA,

      Plaintiff,

vs.                                         No. 16-CR-4572-WJ

WILLIAM DOUGLAS WARWICK,

      Defendant.

## ORDER SUSTAINING IN PART AND OVERRULING IN PART DEFENDANT'S SENTENCING MEMORANDUM AND FORMAL OBJECTIONS TO PRESENTENCE REPORT

THIS MATTER comes before the Court[1] following a hearing on Defendant's Sentencing Memorandum and Formal Objections to Presentence Report for Defendant William Douglas Warwick (**Doc. 130, filed 2/14/18**). Having reviewed the pleadings, heard the arguments of counsel, considered the Pre-Sentence Report and Addendums (Docs. 126, 133, 135), and the applicable law, the Court **SUSTAINS IN PART** and **OVERRULES IN PART** Defendant's objections to the Pre-Sentence Report (Doc. 126) (hereinafter "PSR").

## BACKGROUND

Federal agents searched the residence of William Douglas Warwick (hereinafter "Defendant") once on August 3, 2016, and once on November 7, 2016, both times recovering firearms and amounts of methamphetamine. On August 3, 2016, law enforcement agents arrived at Defendant's residence, a trailer, in search of Shauna Gutierrez, who was at the time a fugitive.

---

[1]     At the time this case was indicted, it was randomly assigned to U.S. District Judge M. Christina Armijo, who ruled on Defendant's Motions to Suppress. Judge Armijo presided over this case until she took senior status in February of 2018, at which time this case was randomly reassigned to the undersigned Judge.

Doc. 91, ¶¶ 3, 6.[2] During the search on August 3, Defendant was detained outside of his home. Doc. 91, ¶¶ 18–19. During that search, agents determined that John Miramontes, who was outside the residence, also lived at the residence in one of the bedrooms, and so agents obtained Mr. Miramontes' consent and signature on the consent-to-search form. Doc. 91, ¶¶ 35, 51. Agents discovered Ms. Gutierrez in a bedroom closet, along with two rifles. Doc. 91, ¶¶ 25–26. Ms. Gutierrez had been living with Defendant since mid-June 2016, after he picked her up while she was hitchhiking. Doc. 91, ¶ 5. Ms. Gutierrez made statements during her interview indicating that she smoked methamphetamine with Defendant daily, and that they had smoked methamphetamine together on that day. PSR, ¶ 13. She also indicated that at that time, she was living with him in his bedroom. PSR, ¶ 13. The firearm seized on August 3 at Defendant's residence was a Marlin Firearms .22LR caliber rifle, which was recovered in the closet of the bedroom to the left of the front entrance. Doc. 91, ¶ 24; PSR ¶ 15.[3] The 20.3 grams of methamphetamine recovered on August 3 were found by agents inside a black leather vest on the floor next to the front door. Doc. 91, ¶ 60; PSR, ¶ 19. Agents seized the firearms recovered during the search, but did not arrest Defendant at that time. Doc. 91, ¶ 73.

Law enforcement agents returned to Defendant's residence on November 7, 2016, to execute an arrest warrant based Defendant's status as a felon and his possession of the firearms that were seized on August 3. Doc. 91, ¶¶ 73–75. Agents found Defendant outside his residence, working on a motorcycle with a man named Mickey Le. Doc. 91, ¶¶ 75, 77. The agents conducted a protective sweep of the trailer because of perceived danger resulting from the

---

[2]    For the relevant background, the Court relies on the findings of fact and legal conclusions in the Memorandum Opinion and Order by U.S. District Judge M. Christina Armijo, the judge originally assigned to this case (Doc. 91, filed 8/30/17).

[3]    The PSR, ¶ 28, states that Defendant possessed four firearms, but all parties agree that one of the firearms recovered on August 3 was a Harington & Richardson Inc. model Huntsman rifle, .45 caliber, which does not qualify as a firearm for purposes of the Sentencing Guidelines. PSR, ¶ 15; Addendum to the Presentence Report, Doc. 133.

presence of firearms and methamphetamine, and a number of factual circumstances. *See* Doc. 91. During the sweep, agents discovered two firearms, a Ruger Redhawk .44 magnum revolver and an F.I.E. E15 .22 caliber revolver, in the drawer of the nightstand in Defendant's bedroom. PSR, ¶¶ 17–18; Doc. 91, ¶¶ 91, 94, 96. Also in the nightstand drawer were a jar of marijuana and plastic baggies containing an unknown amount of methamphetamine. PSR, ¶ 17. Agents testified they observed plastic baggies and ammunition. Doc. 91, ¶¶ 97–98. Agents recovered 47.1 grams of methamphetamine in the November 7 search, and there is no dispute that 45.7 grams were on Defendant's person.[4] PSR, ¶ 19; Conditional Plea Agreement, Doc. 123, ¶ 11. Judge Armijo conducted a suppression hearing on May 25, 2017, June 1, 2017, and June 16, 2017, at which time she heard argument and reviewed evidence and testimony from agents and Defendant about the two searches. Judge Armijo granted Defendant's motion to suppress the firearms recovered in the protective sweep on November 7, 2016, on the grounds that the search exceeded constitutional limits imposed by the Fourth Amendment. Doc. 91, filed 8/30/17.

On November 13, 2017, Defendant entered a conditional guilty plea with the United States to Count 1 and to a lesser-included charge of Count 3 of the Superseding Indictment. Superseding Indictment, Doc. 36, filed 3/28/17; Doc. 123, filed 11/13/17. Defendant pleaded guilty to Prohibited Person in Possession of Firearms, in violation of 18 U.S.C. § 922(g)(1) and (g)(3), on or about August 3, 2016 (Count 1), and Possession of Methamphetamine, in violation of 21 U.S.C. § 844, on or about November 7, 2016 (lesser-included charge of Count 3). Doc. 123, ¶ 3. Count 1 was possession of the Marlin Firearms .22LR caliber rifle that was recovered during the search of his residence on August 3, 2016. Doc. 123, ¶¶ 4–5, 11. Defendant did not plead guilty to possession of methamphetamine from that date. The lesser-included charge of

---

[4] According to the PSR, the amount of actual methamphetamine recovered that day was 47.1 grams. Doc. 126, ¶ 19. For the purposes of calculating Defendant's sentence, the Court finds Defendant possessed 45.7 grams of methamphetamine on November 7, 2016, as stated in Defendant's Plea Agreement. Doc. 123, ¶ 11.

Count 3 was to possession of 45.7 grams of methamphetamine that were recovered on his person during the search incident to arrest at his residence on November 7, 2016. Doc. 123, ¶¶ 6, 11. Pursuant to the ruling on August 30, 2017 (Doc. 91), the firearms that agents recovered on November 7, 2016 were suppressed, and Defendant did not plead guilty to possession of those.

After Defendant entered the guilty plea, the United States Probation Officer prepared the Pre-Sentence Investigation Report ("PSR"). Doc. 126, filed 1/4/18. Paragraphs 34 and 35 set forth that Defendant should receive a role reduction of 3 because Defendant accepted responsibility in this matter. With a total adjusted offense level of 23 and a criminal history category of III, the computed guidelines range is 57–71 months. PSR, ¶ 79. Defendant filed his Sentencing Memorandum and Formal Objections to the Presentence Report on February 14, 2018. Doc. 130 ("Memorandum").

In his Memorandum, Defendant argues that he should not receive three sentencing enhancements at issue under the United States Sentencing Guidelines (hereinafter "USSG" or "Sentencing Guidelines"). First, Defendant objects to the Government's assertion that the Probation Officer should apply a two-level enhancement under USSG § 3C1.1 for obstruction of justice based on Defendant's testimony at the suppression hearing.  Doc. 130 at 4; Doc. 134 at 3. Second, Defendant objects to the four-level enhancement applied under USSG § 2K2.1(b)(6)(B) for possession of a firearm in connection with another felony offense. PSR, ¶ 28. Third, Defendant objects to the two-level enhancement under USSG § 2K2.1(b)(1) for possession of three or more firearms as relevant conduct. PSR, ¶ 27. The PSR does not include the enhancement for obstruction, but it does reflect the other two enhancements at issue. Defendant posits that without the enhancements, his sentencing range should be 30–37 months' imprisonment. Doc. 130 at 4. Defendant argues that 30 months' imprisonment is appropriate

under 18 U.S.C. § 3553(a) to secure a sentence that would be sufficient, but not greater than necessary. Doc. 130 at 7. The Government asks for a sentence of 60 months, considering Defendant's history and characteristics, plus his testimony at the suppression hearing; if the Court applies the obstruction enhancement, the United States requests a 70-month sentence. Doc. 134 at 4.

Upon receiving this case, the Court heard argument from the parties on May 30, 2018, regarding defense's objections to the PSR in the Sentencing Memorandum and the Government's response. At the hearing, the Government did not present any evidence, exhibits, or testimony to the Court for consideration in support of the Government's position that these three enhancements should apply. The Court vacated Defendant's sentencing hearing that was set for May 30, 2018, in order to allow the Court additional time to consider the oral and written objections to the PSR submitted by Defendant.

## DISCUSSION

## I.     Enhancement for obstruction of justice

Contrary to the position of the Probation Officer and over Defendant's objection, the United States argues that Defendant should receive a two-point enhancement for obstruction of justice, pursuant to USSG § 3C1.1.[5] The Government asserts that as Judge Armijo found Defendant not credible during his testimony at the suppression hearing, "he testified in a manner consistent with the obstruction of the administration of justice." Doc. 134 at 3. The United States claims that Defendant's "testimony was designed to sway Judge Armijo to suppress additional evidence and could have resulted in additional evidence being suppress[ed] had she believed

---

[5]     This section provides in relevant part that the enhancement applies "[i]f (1) the defendant willfully obstructed or impeded, or attempted to obstruct or impede, the administration of justice with respect to the . . . prosecution . . . of the instant offense of conviction, and (2) the obstructive conduct related to (A) the defendant's offense of conviction and any relevant conduct; or (B) a closely related offense, . . . ." USSG § 3C1.1.

him." *Id.* The Government still asks the Court to give the reduction for acceptance of responsibility under USSG § 3E1.1, as was included in the plea agreement. Doc. 123, ¶ 13. According to the Government, the sentencing range with the additional two-level enhancement would be 70–87 months. Doc. 134 at 3.

Defendant argues that the Court should not give the enhancement for obstruction under either the binding authority of *United States v. Salazar-Samaniega*, 361 F.3d 1271 (10th Cir. 2004), or under the persuasive authority of *United States v. Hunter*, 835 F.3d 1320 (11th Cir. 2016). First, the Court looks to *Salazar-Samaniega* for the two-part test the Tenth Circuit articulated regarding whether the district court may give the defendant a reduction for accepting responsibility, while also giving the defendant an enhancement for obstruction of justice. 361 F.3d at 1278. The Circuit referenced comment n.4 to USSG § 3E1.1, which provides:

> Conduct resulting in an enhancement under § 3C1.1 (Obstructing or Impeding the Administration of Justice) ordinarily indicates that the defendant has not accepted responsibility for his criminal conduct. There may, however, be extraordinary cases in which adjustments under both §§ 3C1.1 and 3E1.1 may apply.

USSG § 3E1.1 n.4. In *Salazar-Samaniega*, the Tenth Circuit ruled that

> in determining whether a case is "extraordinary" so as to merit both a § 3E1.1 reduction and a § 3C1.1 enhancement, the sentencing court must consider the totality of the circumstances, including, but not limited to 1) whether the obstruction of justice was an isolated incident or an on-going, systematic effort to obstruct the prosecution, and 2) whether defendant voluntarily terminated his obstructive conduct and truthfully admitted the conduct comprising the offense of conviction.

361 F.3d at 1280. Thus, the Tenth Circuit put forward two factors for the district court to consider, but also noted that courts may have non-listed considerations about whether the circumstances are sufficiently "extraordinary" to give the enhancement and the reduction. *Id.*

Defendant also points to the more recent *Hunter* case out of the Eleventh Circuit, which is factually similar, but is only persuasive authority to this Court. 835 F.3d 1320 (11th Cir.

2016). In *Hunter*, the Government breached the plea agreement because it failed to recommend the reduction for acceptance of responsibility that was included in the plea agreement, and the Government instead argued for the enhancement for obstruction of justice because the court found the defendant's testimony not credible at the suppression hearing. *Id.* at 1323. The circuit stated that "[w]hether the government violated the agreement is judged according to the defendant's reasonable understanding at the time he entered his plea." *Id.* at 1324; *accord United States v. Rockwell Int'l Corp.*, 124 F.3d 1194 (10th Cir. 1997). The Eleventh Circuit explained that "if, at the time it offered the plea agreement, the government was aware of facts that would allow it to . . . avoid its promise therein, then it would be extending an illusory promise." 835 F.3d at 1326. The circuit noted that the Government was in fact already aware of the court's findings regarding the defendant's testimony from the suppression hearing at the time it offered the plea agreement. *Id.* Thus, the *Hunter* court determined that the Government breached the agreement because the defendant would not have reasonably understood such an "empty promise." *Id.*

Considering *Salazar-Samaniega* and *Hunter*, the Court agrees with Defendant that imposition of the enhancement for obstruction of justice would be improper in this case. Under the *Salazar-Samaniega* test, and considering the totality of the circumstances, the Court does not find that this is an "extraordinary" case that would allow for the imposition of the enhancement alongside the promised reduction. Although, at the hearing, the United States referenced a number of instances in which Judge Armijo ruled Defendant's testimony was not credible,[6] the Court agrees with the Probation Officer that these instances do not rise to an "ongoing, systemic effort to obstruct justice." USSG § 3C1.1; *see* Second Addendum to the Pre-Sentence Report,

---

[6]     Doc. 91, ¶ 17(h) (consent to search); Doc. 91, ¶ 22 (statements by agents to Defendant); Doc. 91, ¶¶ 50, 52–53 (same); Doc. 91, ¶ 91 (statements that drawer was always closed); Doc. 91, ¶ 97 (statements that cabinet was always closed).

Doc. 135. Furthermore, under the rationale employed in *Hunter*, imposing the enhancement for obstruction would render the plea agreement illusory based on a reasonable understanding of the promises it contained regarding a reduction for acceptance of responsibility. Notably, the Government was aware of Defendant's testimony and Judge Armijo's findings before Defendant entered the plea agreement, as was the case in *Hunter*. Thus, the Court sustains Defendant's objection to the United States' request that the Court impose the two-level enhancement for obstruction of justice under USSG § 3C1.1.

## II.     Enhancement for possession of a firearm in connection with another felony

USSG § 2K2.1(b)(6)(B) sets forth that this enhancement should be applied if "the defendant used or possessed any firearm or ammunition in connection with another felony offense; or possessed or transferred any firearm or ammunition with knowledge, intent, or reason to believe that it would be used or possessed in connection with another felony offense."  The Government asserts that the Probation Officer correctly applied the four-level enhancement under USSG § 2K2.1(b)(6)(B). PSR, ¶ 28. Defendant objects on the grounds that the Government has not shown by a preponderance of the evidence that Defendant's charged possession of a firearm was "in connection with another felony offense," that being the possession of methamphetamine. Doc. 138 at 4. For the reasons below, the Court finds that the Government has not carried its burden to show that this enhancement applies to Defendant's possession of these firearms because 1) the Government has not provided a sufficient record to prove by a preponderance of the evidence that Defendant possessed methamphetamine on August 3, and 2) the Government has not shown that the possession of the firearms facilitated another felony on November 7.

### A.     Sentencing Guidelines' language

First, the Sentencing Guidelines' language provides application of this enhancement to use or possession of "any firearm" and not only the charged firearm. USSG § 2K2.1(b)(6)(B); *see United States v. Jardine*, 364 F.3d 1200, 1208 (10th Cir. 2004) (adopting the Eight Circuit's interpretation of "any firearm" as "including that firearm or ammunition used by a defendant in connection with another offense, even if different from the particular firearm or ammunition upon which defendant's felon-in-possession conviction is based"), vacated on other grounds, 543 U.S. 1102 (2005). This aligns with the intended effects of considering relevant conduct, as opposed to only charged conduct, for the purposes of sentencing. USSG § 2K2.1 cmt. n.14(E) ("In determining whether subsections (b)(6)(B) and (c)(1) apply, the court must consider the relationship between the instant offense and the other offense, consistent with relevant conduct principles."). The commentary to § 2K2.1 explains that "[i]n determining whether subsection (b)(6)(B) applies, the threshold question for the court is whether the two unlawful possession offenses . . . were 'part of the same course of conduct or common scheme or plan.'" USSG § 2K2.1 cmt. n.14(E).

Considering the discussion found in the Sentencing Guidelines' commentary, the Court finds that the circumstances of the two searches giving rise to Counts 1 and 3 constitute the "same course of conduct." USSG § 1B1.3 cmt. n.5(B). The Court considers the following facts: the searches involved the same geographic location; the time interval between the searches was approximately three months; and the searches both revealed firearms and amounts of methamphetamine. The Court also considers Defendant's statements to agents that he believed he has the right to possess firearms regardless of his status as a convicted felon (Doc. 91, ¶ 43, pp. 36, 38), and his statements that he regularly used methamphetamine (Doc. 91. ¶¶ 62–63). These facts and statements by Defendant reflect that these events are sufficiently connected or

related to constitute the "same course of conduct." *See United States v. Jardine*, 364 F.3d 1200, 1209 (10th Cir. 2004), vacated on other grounds, 543 U.S. 1102 (2005). Upon finding that these events constitute relevant conduct, the Court now considers whether the enhancement under § 2K2.1(b)(6)(B) applies to the firearm seized on August 3 (for which Defendant is charged), and to the firearms seized on November 7 (which were suppressed for purposes of trial).

Second, the commentary also defines "another felony offense" as used in the Sentencing Guidelines' language in this section as meaning "any federal, state, or local offense, other than the explosive or firearms possession or trafficking offense, punishable by imprisonment for a term exceeding one year, regardless of whether a criminal charge was brought, or a conviction obtained." USSG § 2K2.1 cmt. n.14(C). Thus, the other felony offense does not have to be charged conduct. *See United States v. Gambino-Zavala*, 539 F.3d 1221, 1230 n.3 (10th Cir. 2008) ("Although [defendant] has not been convicted of this offense, his sentence may still be enhanced on the basis of this conduct."). The PSR reflects that 20.3 grams of methamphetamine were recovered in the August 3 search, and Defendant pleaded guilty to possession of the 45.7 grams that were recovered in the November 7 search. PSR, ¶ 19; Doc. 123, ¶ 11. Possession of methamphetamine is a felony under the state law of New Mexico. *See* NMSA § 30-31-23(E). The Court agrees with the Government that although Defendant was not charged by the State of New Mexico, possession of methamphetamine is a felony sufficient to satisfy the enhancement's requirement of "another felony offense."[7] See *United States v. Tobanche*, 643 F. App'x 781, 784–85 (10th Cir. 2016) (examining the application of the enhancement to felony possession of methamphetamine in the State of New Mexico). Thus, the Court considers application of this enhancement to the felony of possession of methamphetamine on August 3 and November 7 in

---

[7] The Court considers the Government's alternative argument, which is that the other felony offense should be treated as a drug-trafficking offense, *infra*.

relation to the firearms seized on each of those dates.[8]

### B. Analysis

#### i. August 3: possession of firearm in connection to possession of methamphetamine

The firearm seized on August 3 was a Marlin Firearms .22LR caliber rifle, which was recovered in the closet of the bedroom to the left of the front entrance. PSR, ¶ 15; Doc. 91, ¶ 23. Defendant has admitted and pleaded guilty to knowingly possessing this firearm. Doc. 123, ¶ 11. The methamphetamine recovered on August 3 was found by agents inside a black leather vest on the floor next to the front door. Doc. 91, ¶ 60. Defendant has not admitted to possession of methamphetamine on August 3. Based on the evidence and arguments before the Court, the Government has not carried its burden to show a connection between the firearm and the methamphetamine sufficient for the enhancement to apply because the Government has not shown by a preponderance of the evidence that Defendant possessed the methamphetamine.

As the Tenth Circuit explained in *United States v. Tobanche*, 643 F. App'x 781 (10th Cir. 2016), the Government must prove three elements to show a violation of NMSA § 30-31-23(E): "(1) the defendant must possess methamphetamine, (2) the defendant must know he possesses methamphetamine, and (3) the possession must occur in New Mexico." 781 F. App'x at 784 (citing New Mexico Rules Ann., Uniform Jury Instruction 14-3102). Thus, "an obvious precondition for possession of a controlled substance and for possession of a controlled substance with intent to distribute is *possession*." *United States v. Ferrell*, No. 17-1024, 2018 U.S. App. LEXIS 5364, at *20 (10th Cir. Mar. 2, 2018). Possession may be either actual or constructive. *Id.* "Actual possession exists when a person ha[d] direct physical control over a

---

[8]     The Government also argues that because Defendant was wearing an empty holster on his person during the August 3 encounter, "[i]t is reasonable to conclude that he possessed a firearm in connection with his possession of methamphetamine on that occasion." Doc. 134, at 2. The fact that a firearm fitting the holster was not recovered from the August 3 search prevents the Court from finding that Defendant possessed such a weapon on August 3.

thing. Constructive possession is established when a person, though lacking such physical custody, still ha[d] the power and intent to exercise control over the object." *Id.* (quoting *Henderson v. United States*, 135 S. Ct. 1780, 1784 (2015)). As the Tenth Circuit explained in *United States v. Little*, 829 F.3d 1177 (10th Cir. 2016), the Supreme Court's formulation of constructive possession in *Henderson* includes an intent element, such that "[c]onstructive possession exists when a person not in actual possession knowingly has the power and intent at a given time to exercise dominion or control over an object." 829 F.3d at 1182.

The Government argues that the enhancement should apply because the PSR Addendum, Doc. 133, states that Defendant "was found to be in possession of a firearm and methamphetamine. The defendant, a felon, possessed the firearms in connection with another felony offense, specifically quantities of methamphetamine on two occasions." Doc. 134 at 2. The Court notes, however, that without more, "[c]onclusions in the presentence report unsupported by facts do not constitute a preponderance of the evidence." *United States v. Gomez-Arrellano*, 5 F.3d 464, 467 (10th Cir. 1993). The Government has not presented, referenced, or attached any exhibits or testimony upon which the Court could rely for a finding that the methamphetamine recovered in the leather vest on August 3 was actually or constructively possessed by Defendant in violation of federal or state law. Even at the hearing on May 30, 2018, the Government still did not present or even reference any testimony or exhibits on this issue. The Government has essentially asked the Court to accept its representation that the methamphetamine found on August 3 belonged to Defendant, but the Government's representations do not suffice as a preponderance of the evidence. *Gomez-Arrellano*, 5 F.3d at 466 ("Sentencing determinations of relevant conduct and offense characteristics must be supported by a preponderance of the evidence.").

The facts of this case and the circumstances of the August 3 search do not allow the Court to infer that Defendant possessed, either actually or constructively, the recovered methamphetamine from August 3. During the search, agents determined that Mr. Miramontes also lived at the residence in one of the bedrooms. Doc. 91, ¶¶ 35, 51. Also during the search, agents discovered Ms. Gutierrez in the bedroom closet, along with the rifles. Doc. 91, ¶¶ 25–26. Agents learned that Ms. Gutierrez had been living with Defendant since mid-June 2016. Doc. 91, ¶ 5; PSR, ¶ 13. Ms. Gutierrez made statements during her interview indicating that she smoked methamphetamine with Defendant daily, and that they had smoked methamphetamine together on that day. PSR, ¶ 13. Thus, there were at least two other people living in and present at the residence on August 3, and at least one other methamphetamine user living in the residence, which prevents an inference that the vest and methamphetamine in the common area belonged exclusively to Defendant. *See Little*, 829 F.3d at 1183 (ruling that because defendant had exclusive control over the building, the jury could infer his dominion and control over the weapons inside); *United States v. Hishaw*, 235 F.3d 565, 571 (10th Cir. 2000) ("In most cases, the defendant's dominion, control, and knowledge may be inferred if he had exclusive possession of the premises on which the object was found.").

The evidence does reflect that Defendant habitually used methamphetamine, and used it on August 3. Doc. 91, ¶¶ 62–63. Defendant maintained, however, that the methamphetamine recovered on August 3 belonged to Ms. Gutierrez (Doc. 126, ¶ 14); while the Court does not have to credit such claims, the Government has offered no contrary evidence to support its position. The evidence does not support a finding that Defendant actually possessed the methamphetamine in the vest, as there is no evidence before the Court that he was wearing, had previously worn, or had personally handled or used the vest or the methamphetamine inside it.

Furthermore, the presence of the vest inside the residence is insufficient to establish constructive possession, as the Government has offered no evidence upon which the Court could find that Defendant had "power and intent to exercise control over the object." *Henderson*, 135 S. Ct. at 1784; *United States v. Khondaker*, 263 F. App'x 693, 699–700 (10th Cir. 2008) ("When contraband may be attributed to more than one person, however, as in a case of joint occupancy of a premises, the government bears a higher burden of proof. It must show some nexus, link, or other connection between the defendant and the contraband." (citations omitted)). Thus, not only has the Government failed to show possession, but it has also failed to satisfy the "knowingly possessed" requirement, as stated in *Tobanche*, for showing a violation of NMSA § 30-31-23(E).

Most recently in *United States v. Ferrell*, the Tenth Circuit ruled in an unpublished opinion that the district court improperly applied this enhancement under § 2K2.1(b)(6)(B) when the evidentiary record lacked sufficient support for the finding that the defendant possessed narcotics. No. 17-1024, 2018 U.S. App. LEXIS 5364, at *23 (10th Cir. Mar. 2, 2018). In *Ferrell*, the Circuit explained that "the record does not support a finding of drug possession. Without a finding of possession, we cannot sustain the four-level sentencing enhancement based on either possession of a controlled substance or possession of a controlled substance with the intent to distribute." *Id.* For the same reasons, the enhancement under § 2K2.1(b)(6)(B) does not apply based on the August 3 possession of the rifle in connection to the methamphetamine recovered that day.

      ii.      **November 7: possession of firearms in connection to possession of or possession with intent to distribute methamphetamine**

45.7 grams of methamphetamine recovered on November 7 were found Defendant's person, in the search incident to arrest. Doc. 123, ¶ 11. The two firearms, a Ruger Redhawk .44

magnum revolver and an F.I.E. E15 .22 caliber revolver, were found in the search on November 7 in the drawer of the nightstand in Defendant's bedroom.[9] Doc. 126, ¶¶ 17–18.

USSG § 2K2.1(b)(6)(B) sets forth that this enhancement should be applied if "the defendant used or possessed any firearm or ammunition in connection with another felony offense; . . . ." The application note to § 2K2.1 defines "in connection with" as meaning that the firearm "facilitated, or had the potential of facilitating, another felony offense or another offense, respectively." USSG § 2K2.1 cmt. n.14(A); *United States v. Justice*, 679 F.3d 1251, 1254 (10th Cir. 2012). The commentary explains that for a drug-trafficking offense, the enhancement applies if the firearm was recovered "in close proximity to drugs, drug-manufacturing materials, or drug paraphernalia." USSG § 2K2.1 cmt. n.14(B). In those cases, the enhancement "is warranted because the presence of the firearm has the potential of facilitating another felony offense . . . ." *Id.* For all other offenses, including simple possession, the Tenth Circuit has ruled that "possession of a firearm may facilitate an offense by emboldening the possessor to commit the offense." *Justice*, 679 F.3d at 1255 (adopting the emboldenment theory for analysis of enhancement as applied to felony possession of methamphetamine).

The Government argues that the Court should treat the offense of possession of methamphetamine as a drug-trafficking offense for the purposes of sentencing because the amounts of methamphetamine recovered are consistent with distribution, considering also that Defendant has a history of manufacturing methamphetamine and that Defendant admitted to using methamphetamine. Doc. 134 at 3. Defendant asserts that he has not pleaded guilty to a drug-trafficking offense, as he pleaded guilty to possession of methamphetamine, and that the

---

[9]      Although the firearms seized on November 7 were suppressed for the purposes of trial in Defendant's case, as discussed *supra*, the language of the Sentencing Guidelines instructs that the enhancement under § 2K2.1(b)(6)(B) may be applied for possession of "any firearm" pursuant to relevant conduct standards. *See United States v. Jardine*, 364 F.3d 1200 (10th Cir. 2004), vacated on other grounds, 543 U.S. 1102 (2005).

Government has not met its burden of showing a connection between the firearm and the methamphetamine. Doc. 138 at 5–6.

Under the standards of relevant conduct, the Court agrees with the Government that it could apply the enhancement if the Court found that Defendant's conduct was consistent with a drug distribution felony under federal law, even though Defendant was not charged with a drug-trafficking offense. See *United States v. Tobanche*, 643 F. App'x 781 (10th Cir. 2016) (affirming district court's application of enhancement on grounds that evidence supported finding of drug-trafficking offense, even though defendant only pleaded guilty to firearm offense). The Tenth Circuit has stated that "[t]o prove a charge of possession with the intent to distribute, the government must show that the defendant possessed the controlled substance; knew that he had it; and possessed it with the intent to distribute it." *United States v. Allen*, 235 F.3d 482, 492 (10th Cir. 2000). In consideration of those elements, "[f]acts that can go toward proving that a defendant possessed drugs with the intent to distribute include: (1) the amount of the drugs; (2) the way they are packaged; (3) the presence of cash; and (4) the presence of firearms." *Id.* The Tenth Circuit has "also noted a fifth relevant factor: The presence of drug paraphernalia in close proximity to drugs." *United States v. Khondaker*, 263 F. App'x 693, 701 (10th Cir. 2008). The Circuit has repeatedly ruled that a "jury may infer intent to distribute from the possession of large quantities of drugs." *United States v. Pulido-Jacobo*, 377 F.3d 1124, 1131 (10th Cir. 2004).

Considering, however, that the Government has not offered any evidence other than reference to the drug quantity to support its position, the Court is unable to find by a preponderance of the evidence that the evidence supports a drug-trafficking offense. While there were a number of agents present at the November 7 search, the Government has not offered or even referenced testimony from any of them about evidence that was recovered, and why such

evidence would indicate distribution. Nor has the Government offered any agent as an expert to testify about evidence that indicates distribution, or why the quantity of methamphetamine recovered on Defendant's person on November 7 is indicative of distribution.[10] The Government has not provided or referenced any exhibits, such as recordings or photographs, upon which the Court could rely. Thus, if there is evidence concerning "tools of the trade" recovered in the November 7 search, such as packaging materials, cash, manufacturing materials, or scales, such evidence has not been offered to the Court for consideration for sentencing. While the record does state that there were syringes and pipes throughout the trailer, Doc. 91, ¶ 61, the Court has no information about where that paraphernalia was located in relation to the firearms in the nightstand. Finally, the Government has not offered any reason for why the presence of firearms in the nightstand in the bedroom is indicative of distribution when the quantity of methamphetamine was recovered on Defendant, who was outside.

As the Tenth Circuit has explained, "[w]e have often reminded counsel that it is not the function of the court to comb the record in search of support for their arguments. Judges are not like pigs, hunting for truffles buried in briefs." *United States v. Briebel*, 312 F. App'x 93, 97 (10th Cir. 2008) (citation and quotation marks omitted); *see also Adler v. Wal-Mart Stores*, 144 F.3d 664, 672 (10th Cir. 1998) ("[W]e, like the district courts, have a limited and neutral role in the adversarial process, and are wary of becoming advocates who comb the record of previously available evidence and make a party's case for it."). Furthermore, the United States is obviously aware that a three-day suppression hearing was conducted in front of Judge Armijo, and that the Government's burden includes the duty to educate this Court of the facts upon which the prosecution relies for sentencing. Therefore, while the law does allow an inference of intent to

---

[10]     As the Court found that the Government failed to establish Defendant's possession of methamphetamine on August 3, the Court does not consider the August 3 amount aggregated with the November 7 amount.

distribute from a large amount of drugs, the Court is unable to ignore the Government's apathetic and unsuccessful attempt to carry its burden when it is unmistakably apparent what facts the Court would consider to support a drug-trafficking offense.

The Court, therefore, undertakes the analysis for a charge of simple possession, as required by *United States v. Justice*, 679 F.3d 1251(10th Cir. 2012), in which the Tenth Circuit explained that "possession of a firearm may facilitate an offense by emboldening the possessor to commit the offense." 679 F.3d at 1255 (noting that "Defendant's possession-of-methamphetamine offense was not a drug-trafficking offense"). In *Justice*, the methamphetamine was found on the defendant, and the firearms were loaded and easy accessible in the vehicle, such that "[a] reasonable person could find that the firearms gave [the defendant] a sense of security emboldening him to venture from his home with drugs that someone might wish to take from him by force." *Id.* The Tenth Circuit concluded that "when the defendant is out and about, with drugs on his person and a loaded firearm within easy reach, one can infer that the proximity of the weapon to the drugs is not coincidental and that the firearm 'facilitated, or had the potential of facilitating,' the drug offense by emboldening the possessor." *Id.* at 1256; *see United States v. Gomez-Arrellano*, 5 F.3d 464, 467 (10th Cir. 1993) (explaining that the Government must show a "nexus" and that the weapon's possession is not "coincidental"). The Circuit warned, however, that "emboldenment is not always present when firearms are near drugs." *Id.* at 1256. To this point, the Circuit cited *United States v. Smith*, 535 F.3d 883, 886 (8th Cir. 2008), in which the Eighth Circuit ruled the emboldenment theory was not applicable because defendant did not venture from home into public with the drugs or firearms, and because the drug residue did not provide a sufficient nexus. 535 F.3d at 886 ("In our case, Smith did not venture into public with either the methamphetamine residue or the firearms; he simply possessed them in his

home.").

Considering the facts, the Court cannot conclude that the possession of these firearms facilitated or had the potential of facilitating the offense by emboldening Defendant to possess the methamphetamine. The two revolvers recovered on November 7 were inside the residence, in the nightstand drawer in Defendant's bedroom, and Defendant was outside with the methamphetamine on his person, working on a motorcycle with Mr. Le. First, the Court notes that Defendant did not take the drugs or the firearms in public. Defendant's residence was apparently in an isolated and rural area, Doc. 91 at 37, so it seems unlikely that he would have been accosted by surprise by someone seeking to take the drugs by force. While it is not necessary that Defendant have left his residence, *see United States v. Basnett*, 735 F.3d 1255 (10th Cir. 2013) (explaining defendant possessed over a dozen firearms in his home to protect the plethora of gains from his crime ring), the rationale behind the theory that a defendant gained a sense of protection from the weapon that emboldened him to commit the offense is not apparent here. Additionally, the firearms and methamphetamine were not in the same proximity, and Defendant and Mr. Le were approximately thirty feet from the door of the trailer. Doc. 91, ¶ 77. At that point, the firearms would not have allowed Defendant to protect himself in the event someone tried to take the methamphetamine from him by force. Without easy access to the firearms, which is a consistent factor in the emboldenment theory cases,[11] it is again not apparent how Defendant felt emboldened to possess the methamphetamine on his person outside the

---

[11]    *See United States v. Perry*, No. 17-7036, 2018 U.S. App. LEXIS 7913 (10th Cir. Mar. 29, 2018) (affirming enhancement because defendant's possession of firearm during police chase emboldened him to elude police); *United States v. Tobanche*, 643 F. App'x 781 (10th Cir. 2016) (affirming enhancement because defendant possessed the firearm on his person and drugs were easily accessible in his vehicle); *Justice*, 679 F.3d at 1255 (describing access to firearms in vehicle); *United States v. Swanson*, 610 F.3d 1005 (8th Cir. 2010) (finding vial of PCP in defendant's pocket and loaded gun between driver's seat and center console) (cited by *Justice*); *United States v. Jenkins*, 566 F.3d 160 (4th Cir. 2009) (finding gun under defendant and cocaine base on his fingers) (cited by *Justice*); *United States v. Fuentes Torres*, 529 F.3d 825 (8th Cir. 2008) (applying enhancement when firearm was in center console while defendant was driving) (cited by *Justice*).

trailer. Thus, the Court cannot find that Defendant's possession of the firearms on November 7 facilitated or had the potential of facilitating his possession of methamphetamine on that date.[12]

Finally, the Court rejects the Government's argument that this enhancement should apply because "other felony" is a violation of 18 U.S.C. § 922(g)(3), which is the possession of a firearm by an unlawful user of controlled substances. Count 1, to which Defendant pleaded, is comprised of violations of §§ 922(g)(1) and (g)(3). The Court agrees with Defendant that "[t]he unlawful possession itself cannot be 'another felony' within the meaning of U.S.S.G. § 2K2.1 (b)(6)(B)." Doc. 138 at 6. The Government's cursory treatment of this argument does nothing to persuade the Court that such application of the enhancement would not give rise to a multiplicity issue. *See United States v. Johnson*, 130 F.3d 1420, 1426 (10th Cir. 1997) (ruling that a defendant "can only be convicted and punished for one of the § 922(g) counts").

## III.    Enhancement for possession of three firearms

Defendant argues that he should not receive the sentencing enhancement pursuant to USSG § 2K2.1(b)(1)(A), which provides for a two-point increase if the offense involved three to seven firearms. Defendant asserts that under *United States v. Jessup*, 966 F.2d 1354 (10th Cir. 1992), the exclusionary rule may be applied at sentencing in an effort to deter Fourth Amendment violations by law enforcement. Doc. 138 at 2. The Government and the Probation Officer contend that although the two firearms recovered on November 7 were suppressed for the purposes of trial, the relevant conduct standards provide that the firearms should be considered for sentencing. Doc. 134 at 2. The Government relies on the relevant conduct commentary, which provides:

---

[12]        Furthermore, the Court finds that Defendant's possession of the firearm on August 3 did not facilitate or have the potential of facilitating his possession of methamphetamine on November 7, as the firearm that was seized on August 3 had no nexus to the methamphetamine recovered on November 7.

> The principles and limits of sentencing accountability under this guideline are not always the same as the principles and limits of criminal liability. Under subsections (a)(1) and (a)(2), the focus is on the specific acts and omissions for which the defendant is to be held accountable in determining the applicable guideline range, rather than on whether the defendant is criminally liable for an offense as a principal, accomplice, or conspirator.

USSG § 1B1.3, cmt. n.1; § 1B1.3(a)(1)(A). The Court agrees with the Government that the enhancement should apply because the possession of firearms on November 7 is related to the August 3 firearm possession as relevant conduct, as the Court determined *supra*.

In line with the Sentencing Guidelines' language, which distinguishes criminal liability from sentencing determinations about relevant conduct, is the Tenth Circuit's ruling in *United States v. Ryan*, 236 F.3d 1268 (10th Cir. 2001). In *Ryan*, the Tenth Circuit considered whether evidence obtained in violation of the Fourth Amendment could be properly considered at sentencing. 236 F.3d at 1271. *Ryan* provides that, for the purposes of sentencing,

> under the law of this circuit, as well as the law of other circuits to consider the issue, the district court d[oes] not err in using the evidence obtained during the illegal search and seizure . . . unless there is evidence that the officers' actions in violating [defendant's] rights were done with the intent to secure an increased sentence.

*Id.* at 1272. The Circuit explained in *Ryan* that the officers believed they had reasonable suspicion for the stop, and although they were mistaken, there was no evidence that they planned to conduct the search if it meant "purposefully and knowingly violating [defendant's] constitutional rights." *Id.* at 1273 (stating this was the "usual case" of a search to obtain a conviction, not enhance sentencing). The Circuit noted that some other circuits had considered whether an objective examination, instead of a subjective examination of intent, would deter unconstitutional conduct. *Id.* at 1273, n.3 (collecting cases that "suggested the use of a more objective test that would exclude illegally obtained evidence at sentencing where exclusion of the evidence is necessary to offset an unacceptably high incentive for police to violate the Fourth

Amendment"). Notably, however, the Tenth Circuit did not adopt an objective test, and the Tenth Circuit rule under *Ryan* remains that the court is not required to apply exclusionary rule at sentencing unless there is evidence that officers intentionally violated defendant's rights to secure an increased sentence.[13]

Defendant relies on the pre-*Ryan* comments in *United States v. Jessup*, 966 F.2d 1354 (10th Cir. 1992), which he maintains allows the Court to apply the exclusionary rule at sentencing to deter unconstitutional action by the state. In *Jessup*, however, the Tenth Circuit stated that it was not adopting deterrence as a broad basis, and the Circuit found that deterrence was an inadequate consideration there. 966 F.2d at 1357. The Tenth Circuit indicated in *Jessup* that it thought the correct trend was in the opposite direction, which is reflected in the reasoning in *Ryan* that the exclusionary rule is not properly applied on the grounds of general deterrence. *Ryan*, 236 F.3d at 1271 ("[W]e found that the extension of the exclusionary rule to sentencing would, in the ordinary case, have a minimal deterrent effect on the police. We reasoned that in the usual case, law enforcement officers conduct searches and seize evidence for the purpose of obtaining convictions, not for the purpose of increasing the sentence in a prosecution already pending or one not yet commenced." (citations and quotation marks omitted)).

In Defendant's case, the evidence does not reflect that law enforcement purposefully violated Defendant's constitutional rights with the intent to secure an increased sentence. In the ruling on the suppression hearing, Judge Armijo found the testimony of agents credible regarding the circumstances that informed their belief that a protective sweep was necessary. *See* Doc. 91 at 36–39. Specifically, the ruling relied upon agents' testimony that they believed Mr. Miramontes was inside the trailer; that they believed Defendant would again possess firearms

---

[13]    *See United States v. Hinson*, 585 F.3d 1328 (10th Cir. 2009); *United States v. VanDam*, 493 F.3d 1194 (10th Cir. 2007).

because of his statements about the Second Amendment; that agents were concerned another individual was inside with a firearm that would fit in the holster observed on Defendant on August 3; and that agents believed the property was a "methamphetamine flop house." Doc. 91 at 38. Although Judge Armijo ruled that under *Maryland v. Buie*, 494 U.S. 325 (1989), those circumstances insufficiently supported the decision to conduct the protective sweep, the ruling was that the agents lacked reasonable suspicion, not that the officers had some false pretext for the protective sweep. Doc. 91 at 39–40. The ruling also addressed the testimony from Agent Sainato to the grand jury that "a protective sweep . . . is customary in an arrest scenario." Doc. 91 at 41. Judge Armijo noted that "[a]ny policy by which officers enter a residence after a person is arrested outside that residence and conduct a search therein as a matter of course runs afoul of the Fourth Amendment." Doc. 91 at 41 (citation omitted).

Based on these findings, there is no evidence that the agents possessed the intent to obtain evidence in violation of the Fourth Amendment for the purpose of enhancing Defendant's sentence on November 7. If Defendant had been arrested for the firearms recovered at the August 3 encounter, then the November 7 search could more conceivably have been to gather evidence to enhance his sentence. Defendant was not arrested after the August 3 search, so the evidence obtained on November 7 was not cumulative or effectively "piling on" because Defendant had not yet been charged. Instead, this appears to be the "usual case" referenced in *Ryan*, in which law enforcement obtained this evidence in an effort to obtain a conviction. 236 F.3d at 1273. Furthermore, even if the protective sweep was "customary" as Agent Sainato stated to the grand jury,[14] the evidence only suffices to show that such a policy exceeds the bounds of the Fourth Amendment, not that the officers possessed the subjective intent to seize these firearms to

---

[14]    Apparently, Agent Sainato did not testify at the suppression hearing, so there was no clarification of his statements to the grand jury.

subsequently enhance the Defendant's sentence. Thus, the Court finds that the two-level enhancement under USSG § 2K2.1(b)(1) is appropriately applied here, as there is no basis for applying the exclusionary rule to the suppressed firearms.

## CONCLUSION

For the reasons set forth in this Memorandum Opinion and Order, the Court **SUSTAINS** Defendant's objections to the application of 1) a two level enhancement under USSG § 3C1.1 for obstruction of justice and 2) the four level enhancement set forth in paragraph 28 of the PSR pursuant to USSG § 2K2.1(b)(6)(B) for possession of a firearm in connection with another felony offense. The Court **OVERRULES** Defendant's objection to the application of the two level enhancement set forth in paragraph 27 of the PSR pursuant to USSG § 2K2.1(b)(1) because the offense involved three firearms.

Therefore, the Court finds that Defendant's correctly calculated guideline sentence is offense level 19, criminal history category is III, which results in an advisory Sentencing Guideline range of 37–46 months. The Clerk of the Court shall proceed to reset Defendant's final sentencing hearing by separate notice.

**IT IS SO ORDERED.**

_____
CHIEF UNITED STATES DISTRICT JUDGE